UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| RANDY E. REYES, | ) | No. 09 B 35198 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ONE-ON-ONE FITNESS PERSONAL TRAINING SERVICE, INC., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 A 1277 |
| | ) | |
| RANDY E. REYES, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

This matter is before the court for ruling on the motion of defendant Randy E. Reyes ("Reyes") to dismiss the adversary complaint of One-on-One Fitness Personal Training Service, Inc. ("Fitness"). For the following reasons, Reyes's motion to dismiss under Rule 12(b)(6) will be granted, and the complaint will be dismissed with prejudice.

### 1. Facts

The complaint alleges the following facts which are taken as true for purposes of the motion. *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). Founded in 1997, Fitness is an Illinois corporation engaged in the business of personal fitness training. (Compl. ¶¶ 2, 4, 5). Fitness administers its fitness programs and services its clients through personal trainers who are hired as independent contractors. (*Id.* ¶ 13). Fitness screens clients, provides the trainers with as

many clients as they want to train, and pays the trainers on both a commission and an hourly basis. (*Id.* ¶¶ 14, 15). In return, every trainer is required to sign a "non-compete" agreement that prohibits the trainer from, among other things, taking or servicing Fitness clients, or competing with Fitness within three miles of its Chicago location, for one year after termination. (*Id.* ¶¶ 16, 17).

In October 2004, Fitness engaged Reyes as a personal trainer, and Reyes entered into Fitness's "non-compete" agreement. (*Id.* ¶¶ 22, 25-28). From October 2004 through January 2006, Fitness provided Reyes with dozens of clients and considered his performance satisfactory. (*Id.* ¶¶ 29-30, 32).

Beginning in February 2006, however, the Fitness clients who trained with Reyes suddenly stopped renewing their personal training packages, and Fitness's gross revenues suddenly and sharply declined. (*Id.* ¶ 33). Asked why this was happening, Reyes told Fitness that the clients were "going on their own," could no longer afford the services, had reached their goals, or were moving out of state. (*Id.* ¶ 34). By March 2006, most of Reyes's long-standing morning and evening clients had failed to renew their personal training packages. (*Id.* ¶ 35).

Around the same time, Reyes told Fitness he could no longer train clients during mornings and evenings (although those are the periods when the vast majority of Fitness clients want to train), and asked Fitness to procure him more clients for the middle of the day. (*Id.* ¶¶ 36-38). Asked why he was no longer available in mornings and evenings, Reyes told Fitness he was taking classes. (*Id.* ¶ 38).

In April 2006, Reyes told Fitness he was going to Boston for the summer but would continue to train Fitness clients until June 4, 2006. (*Id.* ¶ 39). Reyes also asked Fitness to invest

more money in marketing to procure additional clients before he left for Boston; those clients, he said, would be transferred to another trainer when he left town. (*Id.* ¶ 40). This was not the first time Reyes had urged Fitness to invest more money in marketing and procure him more clients: he did so continually during the first half of 2006. (*Id.* ¶ 42).

On May 4, 2006, Reyes notified Fitness he was terminating his employment effective in 30 days. (*Id.* ¶ 41). By the time Reyes left his employment with Fitness in June, all 37 of the 37 Fitness clients that Reyes had trained had left as well and were no longer Fitness clients. (*Id.* ¶ 44).

After Reyes's departure, Fitness discovered that files for some of Reyes's clients were missing. (*Id.* ¶ 43). Fitness also learned that Reyes had established a competing personal training service under the name "Thorne Fitness" at a gym just 1.4 miles from Fitness's location and had been training a large number of clients there since early 2006. (*Id.* ¶¶ 45-47).

Fitness alleges that Reyes's representations about why his clients were leaving, about taking classes during the middle of the day, and about moving to Boston for the summer were false. (*Id.* ¶¶ 58, 59). The statements were intended merely to cover Reyes's tracks while he lured away Fitness's clients and trained them at a nearby gym. (*Id.* ¶¶ 58-60). In reliance on Reyes' representations and on his exhortations to spend money on marketing, Fitness invested in marketing and procured additional clients for Reyes that he stole. (*Id.* ¶¶ 62-64).

In 2006, Fitness commenced an action against Reyes in the Circuit Court of Cook County. (*Id.* ¶ 65; *see* Compl. Ex. A). In 2008, the state court entered a judgment in favor of Fitness and against Reyes (and other defendants) on the breach of contract, fraud, and "tortious interference" counts in Fitness's complaint, awarding Fitness $78,250 in damages. (Compl. Ex.

A). In 2009, Reyes filed a chapter 13 bankruptcy petition. (Btcy. Dkt. No. 1).

After Reyes sought bankruptcy protection, Fitness filed the adversary complaint now before the court. The complaint has a single count alleging two legal theories on which Reyes purportedly owes Fitness a non-dischargeable debt. The first is that the debt is the result of "false pretenses, a false representation, or actual fraud" and is non-dischargeable under section 523(a)(2)(A) of the Code. The other is the debt is for a "willful and malicious injury" Reyes inflicted on Fitness and is nondischargeable under section 523(a)(6) of the Code.

Reyes has moved to dismiss the complaint, contending in the alternative that it either fails to state a claim and so must be dismissed under Rule 12(b)(6) or fails to plead fraud with particularity and must be dismissed under Rule 9(b).

## 2. Discussion

Reyes is correct that Fitness's complaint fails to state a claim and must be dismissed. Moreover, the defects in the complaint cannot be cured by amendment. The complaint will therefore be dismissed with prejudice.

### a. Dismissal under Rule 12(b)(6)

A complaint will be dismissed for failure to state a claim under Rule 12(b)(6) (made applicable by Bankruptcy Rule 7012(b), Fed. R. Bankr. P. 7012(b)) unless the complaint clears "two easy-to-clear hurdles." *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough information to give the defendant "fair notice" of the claim. *Regert Dev't LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (internal quotation omitted). Second, the facts alleged must plausibly suggest that the plaintiff

has a right to relief, raising that right above the "'speculative level.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations of the complaint must "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).

Not only must the facts give fair notice of the claim and be factually plausible, but the facts must be legally sufficient in the sense that they invoke a cognizable legal theory. Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). If "as a matter of law it is clear no relief can be granted under any set of facts consistent with the allegations, a claim must be dismissed." *Id.* at 327 (internal quotation and citation omitted); *see Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002) ("At a minimum, a complaint must state facts sufficient to state a claim as a matter of law").

### b. Section 523(a)(2)(A) Claim

In this case, Fitness has no claim under section 523(a)(2)(A) as a matter of law. This is so, not because the complaint fails to allege fraud, but because the complaint fails to allege a debt of the kind section 523(a)(2) encompasses.

Section 523(a)(2) does not except from discharge every debt somehow connected with a fraud. Although the Code defines "debt" broadly, *see* 11 U.S.C. § 101(12), section 523(a)(2) concerns a specific kind of debt – and a debt with a specific relationship to fraud. Section 523(a)(2) excepts from discharge only debts "for money, property, services, or an extension, renewal, or refinancing of credit, *to the extent obtained*" by fraud. 11 U.S.C. § 523(a)(2) (emphasis added). It does not speak of a debt "created by fraud." *McClellan v. Cantrell*, 217

-5-

F.3d 890, 895 (7th Cir. 2000). The initial question, then, must always be whether the debtor "obtained money, property, or services through the alleged fraud." *Hellenic Enter. I v. Vitogiannis (In re Vitogiannis)*, Nos. 08 B 4144, 08 A 315, 2009 WL 1372065, at *9 (Bankr. N.D. Ill. May 15, 2009); *see also Cohen v. De La Cruz*, 523 U.S. 213, 218-19 (1998); *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219-20 (4th Cir. 2007); 4 *Collier on Bankruptcy* ¶ 523.08[a] at 523-43 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010).

In this case, Fitness alleges only that through his fraud Reyes managed to obtain Fitness clients. Reyes is not alleged to have taken "money" from Fitness (since customers relationships, even relationships that have some financial value, are not money in the relevant sense of cash).[1] Nor is Reyes alleged to have taken "services" from Fitness. Fitness does allege that Reyes induced Fitness to invest in marketing, but Fitness was merely marketing its own training programs, not providing services to Reyes or to anyone else at his instance. Reyes benefitted from Fitness's marketing merely to the extent that it gave him additional opportunities to steal clients for himself. So that leaves as the only possible claim here one that through his fraud Reyes obtained "property" from Fitness.

He did not. "Property" for purposes of section 523(a) is determined by state law rather than federal law. *See Vitogiannis*, 2009 WL 1372065, at *11; *Weidle Corp. v. Leist (In re Leist)*, 398 B.R. 595, 602 (Bankr. S.D. Ohio 2008). Illinois conversion law, though not as clear as one might like, generally defines "property" to mean tangible property rather than intangibles. *See*

---

[1] There is some dispute in the case law about whether the debtor must have obtained money directly from the creditor, or whether it is enough that the debtor induced the creditor to pay money to a third party and the debtor benefitted from the payment. *See Morlang v. Cox*, 222 B.R. 83, 85-86 (W.D. Va. 1998) (describing conflicting decisions and adopting the broader interpretation). The dispute is not material here, however, because Fitness does not claim that Reyes induced it to pay money to anyone.

*American Nat'l Ins. Co v. Citbank, N.A.*, 543 F.3d 907, 910 (7th Cir. 2008) (stating that "Illinois courts do not recognize an action for conversion of intangible rights"); *In re Thebus*, 108 Ill. 2d 255, 260, 483 N.E.2d 1258, 1260 (1985) (stating that "the subject of conversion is required to be an identifiable object of property"). The single exception is conversion of a document in which intangible rights are merged. *The Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462, 475-76, 856 N.E.2d 612, 624 (1st Dist. 2006) (citing promissory notes, bonds, bills of exchange, and warehouse receipts as examples).

Clients – or, more accurately, client relationships – are not tangible personal property. They may be legally protected interests, so that parties to those relationships can bring a civil action when some third person interferes with them, as Fitness did here. But they are not personalty that a third person can convert and carry off, as if they were jewelry or televisions or automobiles. Nor is there any allegation here that Fitness's relationships with its clients were merged into a document like a promissory note or warehouse receipt, and it is hard to imagine how they could have been. The Fitness clients Reyes allegedly diverted are not "property" for purposes of section 523(a)(2)(A) any more than they are "money" or "services." *Cf. Vitogiannis*, 2009 WL 1372065, at *11-13 (holding that diversion of "corporate opportunity" did not give rise to a claim under section 523(a)(2)(A)).

Because Fitness's complaint does not allege and cannot allege that Reyes obtained money, property, or services by fraud, the complaint fails to state a claim against Reyes under section 523(a)(2)(A). The section 523(a)(2)(A) claim will be dismissed.[2]

---

[2] It may be worth noting that the judgment Fitness obtained against Reyes in the state court does not aid Fitness's cause here. An Illinois state court judgment on a fraud claim has no res judicata (or claim preclusive) effect on a claim under section 523(a)(2)(A) in the bankruptcy court because the claims are not identical. *Baermann v. Ryan (In re Ryan)*, 408 B.R.

-7-

### c. Section 523(a)(6)

The section 523(a)(6) claim is likewise barred as a matter of law and so must be dismissed. Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Although that section applies in a chapter 7 case, it does not apply in a chapter 13 case like this one.

The exceptions from discharge in chapter 13 cases are listed in section 1328, 11 U.S.C. § 1328, and not all of the exceptions in section 523(a) are incorporated. Under section 1328(a)(2), a chapter 13 discharge excepts from discharge "any debt . . . of the kind specified in . . . paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)." Conspicuously absent from the list is paragraph (6) concerning "willful and malicious injury." Debts nondischargeable under section 523(a)(6) are therefore not excepted and are discharged in chapter 13 cases. *Mason v. Young (In re Young)*, 237 F.3d 1168, 1171 n.2 (10th Cir. 2001); *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1348 (8th Cir. 1990); *Eric Fein & Assoc., P.C. v. Young (In re Young)*, 425 B.R. 811, 815 (Bankr. E.D. Tex. 2010); *Muse v. Day (In re Day)*, 409 B.R. 337, 345 n.4 (Bankr. D. Md. 2009).

Section 1328(a)(4) does address debts for "willful" and "malicious" injuries, excepting from discharge debts for "restitution, or damages, awarded in a civil action against the debtor as a

---

143, 163-64 (Bankr. N.D. Ill. 2009). And although there may be collateral estoppel (or issue preclusive) effect in some cases, there is none here. The preclusive effect of a state court judgment in a federal case depends on state rather than federal law. *A.D. Brokaw v. Mercer*, 305 F.3d 660, 669 (7th Cir. 2002), and under Illinois law a judgment must contain specific findings of fact before it can be issue preclusive, *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 462, 672 N.E.2d 1149, 1156 (1996); *see, e.g. Guardado v. Bozovic (In re Bozovic)*, Nos. 03 B 28675, 04 A 160, 2004 WL 1905355, at *6 (Bankr. N.D. Ill. Aug. 24, 2004) (refusing to give preclusive effect in the absence of "[d]etailed findings of fact"). Fitness's judgment has no factual findings.

result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." 11 U.S.C. § 1328(a)(4). But section 1328(a)(4) is narrower than section 523(a)(6) in several respects. *Waag v. Permann (In re Waag)*, 418 B.R. 373, 375 n.4 (B.A.P. 9th Cir. 2009). Among other things, it concerns a willful or malicious injury that caused "personal injury . . . or death." Fitness does not accuse Reyes of inflicting personal injuries on anyone or causing anyone's death. *Cf. New Equip. Leasing, Inc. v. Sideris (In re Sideris)*, Nos. A-08-62103-PWB, 08-6322, 2008 WL 7874262, at *1 (Bankr. N.D. Ga. July 16, 2008) (holding that conversion of restaurant equipment did not entail "personal injury" for purposes of section 1328(a)(4)); *see also In re Nwoke*, No. 07-10324-SSM, 2008 WL 750591, at *1 n.1 (Bankr. E.D. Va. March 18, 2008) (noting that "personal injury" does not encompass injuries to property).

Because section 523(a)(6) does not apply in chapter 13 cases, Fitness cannot state a claim against Reyes under that section. The section 523(a)(6) claim will be dismissed.

### 3. Conclusion

The adversary complaint of plaintiff One-on-One Fitness Personal Training Service, Inc. against defendant Randy E. Reyes is dismissed with prejudice. A separate order will be entered in accordance with this opinion.

Dated: July 13, 2010

_____
A. Benjamin Goldgar
United States Bankruptcy Judge